UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NaKeena R. F.,                                      Case No. 22-12299

                    Plaintiff,                      Gershwin A. Drain
v.                                                  United States District Judge

COMMISSIONER OF SOCIAL                              Curtis Ivy, Jr.
SECURITY,                                           United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 17)**

Plaintiff NaKeena F. brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her applications for Disability Insurance Benefits and

Supplemental Security Income under the Social Security Act.  This matter is before

the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 16), the Commissioner's cross-

motion for summary judgment (ECF No. 17), Plaintiff's reply (ECF No. 18) and

the administrative record (ECF No. 9).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 16), **GRANT** Defendant's

motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

Plaintiff alleges her disability began on August 12, 2018, at the age of 35.  In February 2020, she applied for disability insurance benefits and supplemental security income.  (ECF No. 9-2, PageID.44).  This was her second application for disability benefits.  Her first application was denied by an Administrative Law Judge ("ALJ") during April 2015.  In her disability report on the applications now before the Court, she listed ailments which diminished her ability to work.  The ailments included: rheumatoid arthritis in both knees, long-term depression, fibromyalgia, carpal tunnel in both hands, and plantar fasciitis in both feet.  (ECF No. 9-6, PageID.3556).  Her applications were denied on July 13, 2021.

Following the denial, Plaintiff requested a hearing by an ALJ.  On July 28, 2021, ALJ Anthony R. Smereka held a telephonic hearing, at which Plaintiff and a vocational expert testified.  (ECF No. 9-2, PageID.66-96).  On August 5, 2021, the ALJ issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff later submitted a request for review of the hearing decision.  On August 3, 2022, the Appeals Council denied Plaintiff's

request for review.  (*Id.* at PageID.30).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on September 28, 2022.

### B.    Plaintiff's Medical History

The medical evidence relevant for this appeal relates to Plaintiff's ability to handle and finger, and thus only evidence related to Plaintiff's upper extremities will be discussed here.

At times from March 2019 onward, Plaintiff complained of tingling and occasional swelling or pain in her hands to medical providers.  (*See, e.g.*, ECF No. 9-7, PageID.1111).  One March 2019 record points to Positive Tinel's and Phalen's signs in both hands and wrists and she was given wrist braces to wear at night.  (*Id.* at PageID.1114-15).  Otherwise, on objective examinations throughout the record, she was repeatedly found to have good range of motion or no limitations in her hands and wrists and no inflammation.  (*Id.* at PageID.624, 794, 933, 1114; ECF No. 9-8, PageID.1266, 1272, 1282, 1287, 1303, 1494).  During June 2019, she reported that she was not wearing the braces because her condition worsened. (ECF No. 9-7, PageID.930).  During June 2020, she reported intermittent use of a brace on her right hand, which continued to be reported in later records.  (ECF No. 9-8, PageID.1312).  In October 2020, she was diagnosed with trigger finger; and referred to a hand surgeon because she declined a cortisone shot.  (*Id.* at

PageID.1461).  Around this time objective examinations recorded "mild swelling" in some fingers and positive trigger nodules at the base of her thumb and index finger.  (*Id.* at PageID.1464).  On April 26, 2021, Tinel's test was negative bilaterally.  (*Id.* at PageID.1494).

The record contains a diagnosis of carpal tunnel syndrome.  (*See, e.g.*, ECF No. 9-7, PageID.579).  The ALJ and the Commissioner assert that Plaintiff underwent EMG testing on her wrists which revealed no evidence of carpal tunnel syndrome.  Plaintiff does not contest that these stemmed from the EMG, however, it does not appear the EMG results are in the record.[1]  But again, as noted above, despite her complaints and the carpal tunnel diagnosis, she largely had normal objective physical examinations.

On June 11, 2020, State agency consultative reviewing physician Dr. Menzies opined that Plaintiff could occasionally handle and finger.  (ECF No. 9-3, PageID.129).  Plaintiff's doctor, who she saw twice, opined that she was limited to handling for one hour in a workday and fingering two hours in a workday.  (ECF No. 9-8, PageID.1609).

## C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

---

[1] Her provider began noting that an EMG would be considered during October 2019. (ECF No. 9-7, PageID.795).  An April 2021 record notes that an EMG was completed, but results were not in yet.  (ECF No. 9-8, PageID.1495).

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since August 12, 2018, the alleged onset date.  (ECF

No. 9-2, PageID.46-47).  At **Step 2**, the ALJ found that Plaintiff had the following

severe impairments: fibromyalgia, bilateral plantar fasciitis, learning disorder,

attention deficit hyperactivity disorder, post-traumatic stress disorder, and obesity.

(*Id.* at PageID.47-49).  At **Step 3**, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.  (*Id.* at PageID.49-50).  **Between Steps 3**

**and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional

capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> to perform sedentary work . . . with additional
> limitations.  She cannot work at unprotected heights or
> around dangerous moving machinery.  She can
> occasionally balance, stoop, kneel, crouch, and climb
> ramps or stairs; but can never crawl or climb ladders,
> ropes, or scaffolds.  She cannot drive in the course of
> employment and cannot use foot controls.  She must
> avoid concentrated exposure to dust, fumes, odors,
> humidity, or wetness, and can have no exposure to
> temperature extremes.  She can have no concentrated
> exposure to vibration or noise, defined as a Selected
> Characteristics of Occupations (SCO) level four or five.
> She has the ability for unlimited reaching and frequent
> handling/fingering.  She has the ability to perform
> simple, routine, and repetitive tasks with a specific
> vocational preparation (SVP) of one or two; and routine

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> work that does not require changes or adaptations in
> work settings or duties more than once a month.  She
> should avoid work at fast production pace, where the
> pace is set by others, such as assembly line or conveyor
> belt work.

(*Id.* at PageID.50-56).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.56).  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there

were existing jobs in significant numbers within the national economy that Plaintiff

could perform, such as addressing clerk, finisher, and taper.  (*Id.* at PageID.56-57).

The ALJ therefore concluded that Plaintiff had not been under a disability, as

defined in the Social Security Act, from the alleged onset date through the date of

the decision.

### D.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[3]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

8

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.     Analysis**

Plaintiff argues that the ALJ erroneously rejected the prior ALJ's RFC

occasional handling and fingering determination, finding instead that Plaintiff can

frequently handle and finger with both hands.  She contends that the medical

evidence does not support the ALJ's decision, and that the ALJ substituted his own

judgment in place of the medical opinion.  The vocational expert testified that if

Plaintiff were restricted to only occasional fingering and handling, she could not

perform jobs existing in sufficient numbers in the national economy.  (ECF No.

16).  Plaintiff says the only new evidence since the prior ALJ's decision is the

current ALJ's own interpretation of medical records and making his own decision

about Plaintiff's functional limitations.  (ECF No. 18, PageID.1695).

1.     The ALJ's Treatment of the Prior RFC

The principle of res judicata bounds an ALJ to a prior determination on an

application for benefits covering the same period.  *Drummond v. Comm'r of Soc.*

*Sec.*, 126 F.3d 842 (6th Cir. 1997); *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929

(6th Cir. 2018).  Under *Earley*, ALJ's are not bound by prior findings when

considering periods of disability that succeed the time adjudicated in the earlier

decision.  When a subsequent application covers a different disability period, the

subsequent ALJ should "consider[ ] the prior ALJ's findings regarding the earlier record when reviewing a petitioner's successive application [and] should make determinations based on a 'fresh look' at the 'new evidence . . . while being mindful of past rulings and the record in prior proceedings.'" *Snow v. Saul*, 2022 WL 813603, at *3 (E.D. Ky. Mar. 16, 2022) (quoting *Earley*, 893 F.3d at 931). "Fresh review is not blind review." *Earley*, 893 F.3d at 934. Therefore, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* at 933. "In sum, *Earley* stands for the proposition that when an ALJ evaluates a subsequent application for benefits, covering a distinct period of time, the ALJ can properly consider a previous ALJ's RFC assessment and errs only when he considers the previous RFC a mandatory starting point for the analysis." *Yack v. Comm'r of Soc. Sec.*, 2022 WL 1913779, at *4 (W.D. Mich. May 19, 2022), *report and recommendation adopted*, 2022 WL 1909973 (W.D. Mich. June 3, 2022).

Plaintiff's application here covers a distinct period that differs from what the prior ALJ considered. Thus, *Earley* applies. The ALJ acknowledged both *Drummond* and *Earley* in his decision. After reviewing the legal principles, the ALJ stated, "Due to the intervening work activity and the receipt of additional medical records, I find sufficient reason to deviate from the prior residual

functional capacity."  (ECF No. 9-2, PageID.54).  Plaintiff appears to argue that the ALJ was required in this paragraph to compare the new evidence with the prior RFC determination.  An ALJ need not compare the new evidence with the prior RFC, point-by-point.

Elsewhere in the decision, the ALJ discussed the medical evidence from the relevant period (after the first adjudicated period).[4]  This discussion of the evidence on Plaintiff's physical capabilities explains why the ALJ concluded Plaintiff could frequently handle and finger bilaterally, instead of occasionally as the prior ALJ concluded.

The ALJ addressed Plaintiff's fibromyalgia and carpal tunnel diagnosis.  As shown above, despite these diagnoses (but no EMG evidence of carpal tunnel syndrome), Plaintiff quite often presented with normal upper extremity examinations.  One time she had positive Tinel's and Phalen's sign testing, on another she had negative Tinel's sign testing.  The ALJ also addressed the medical opinion evidence.  Plaintiff's treating physician, Dr. Gordon offered statements on her functional capacity.  Among his statements are that Plaintiff was limited in handling and fingering.  The ALJ did not find Dr. Gordon's opinion persuasive.

---

[4] The Curt must read the ALJ's decision as a whole.  *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's  decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision.).

First, the ALJ noted that Dr. Gordon treated Plaintiff on only two occasions. Next, despite the manipulative limitations he recorded, the ALJ noted "that testing has not shown the existence of carpal tunnel syndrome (CTS). It is therefore unclear what information Dr. Gordon is using to determine the claimant's limitation." (*Id.* at PageID.55). The State agency reviewing physician adopted the prior RFC. The ALJ rejected this opinion; Plaintiff does not challenge that rejection.

Because the current application was filed for a different period, the ALJ was not bound by the prior ALJ's decision. This is where Plaintiff's argument misses the mark. She argues that there is no new and material evidence since the first determination so this ALJ was bound to adopt the first RFC. That is incorrect. Rather, absent new and material evidence, the ALJ can consider, but is not bound by, the first determination. Instead, the ALJ was required to give the evidence from the new period a "fresh look," which he did. The medical evidence he discussed came from the new period, i.e., between 2018 and the date of the decision. And in the view of the undersigned, the medical opinions and treatment notes are material to Plaintiff's functioning during this period.[5]

The undersigned finds no error related to *Earley*.

---

[5] Also in this section of her brief, Plaintiff maintains that the ALJ did not refer to evidence establishing the reaching and handling requirements of the security clerk/concierge desk jobs. Those are Plaintiff's past relevant work. The ALJ found she could not perform those. Thus, there was no obligation for the ALJ to establish the requirements of those positions in his decision.

2.    ALJ's Treatment of the Evidence

Plaintiff contends that the ALJ impermissibly substituted his own medical interpretation of the evidence since he rejected the opinion evidence and there was no new evidence since the prior period.  This last point is rejected as discussed above; there is new evidence since the prior decision.

The ALJ adequately supported his conclusion that Plaintiff could more than occasionally handle and finger.  He noted that her fibromyalgia symptoms, while present, were helped with medication and did not preclude her from doing activities such as cleaning or caring for a one-year-old.  The ALJ discounted the opinion of Dr. Gordon, a determination Plaintiff does not challenge, in part because EMG testing did not show carpal tunnel syndrome and he only treated Plaintiff twice.  The ALJ also considered Plaintiff's testimony and subjective statements to medical professionals, but concluded her statements conflicted with the objective medical evidence.  She did not challenge that determination.  And to that point, some of the evidence Plaintiff points to to show limitations in the upper extremities comes from subjective statements to medical personnel, not the objective findings of medical personnel.  Since the ALJ discounted her statements, what is relevant here are the objective medical findings.

It is well-settled that "an ALJ  'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is

supported by the medical evidence.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F.

App'x 181, 194 (6th Cir. 2009) (quoting *Meece v. Barnhart*, 192 F. App'x, 456,

465 (6th Cir. 2006)).  But here, the ALJ discounted Dr. Gordon's opinion because

it was not supported by the evidence (namely, testing revealed no carpal tunnel

syndrome).  Elsewhere in the decision, the ALJ also discussed the largely normal

objective examinations and dearth of evidence establishing manipulative

limitations.  And Plaintiff did not challenge the ALJ's evaluation of Dr. Gordon's

opinion.

There is a difference between an ALJ making an RFC determination based

on medical evidence and an ALJ substituting their own medical judgment for that

of a treating physician to make independent medical findings.  ALJs are not

permitted to "play doctor" and interpret raw medical data.  That said, ALJs are not

required to rely on a medical opinion in formulating the RFC.  *Rudd v. Comm'r of*

*Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her

RFC finding on a physician's opinion, 'would, in effect, confer upon the treating

source the authority to make the determination . . . and thus would be an abdication

of the Commissioner's statutory responsibility.'").

The ALJ here did not interpret raw medical evidence or "play doctor."

There were medical opinions in the record that the ALJ considered.  The non-

opinion evidence that remained was not so complex that a lay person could not

make a commonsense judgment about functionality.  Notations about no swelling
and normal range of motion do not indicate severe limitations.  Even notations of
mild swelling in the hands or wrists, coupled with the ability to attend to her own
care and care for a young child, do not indicate severe manipulative limitations.  In
sum, the undersigned suggests there is no error in the ALJ's manipulative
restrictions in the RFC.

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v.
Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown
legal error that would upend the ALJ's decision.  For all these reasons, it is
**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary
judgment (ECF No. 16), **GRANT** Defendant's motion for summary judgment
(ECF No. 17), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule
72.1(d).  Failure to file specific objections constitutes a waiver of any further right
of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and
Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 16, 2023

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge